UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WOODROW FLEMMING,

                                    Plaintiff,
                                                        9:15-CV-00030
v.                                                      (DNH/TWD)

DAVID ROCK, et al.,

                                    Defendants.
_____

APPEARANCES:                                OF COUNSEL:

WOODROW FLEMMING
*Plaintiff pro se*
P.O. Box 146
New York, NY 10039

HON. ERIC T. SCHNEIDERMAN                    HELENA LYNCH, ESQ.
Attorney General for the State of New York
*Counsel for Defendants*
The Capitol
Albany, NY 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT- RECOMMENDATION

## I.      INTRODUCTION

        This pro se prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable David N. Hurd, United

States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Plaintiff Woodrow

Flemming asserted several claims in his complaint. (Dkt. No. 1 at 8-18.[1])  The following claims survived *sua sponte* review: (1) Eighth Amendment excessive force claim against Defendants Jerry Laramary ("Laramary"), Theodore Zerniak ("Zerniak"), Daniel King ("King"), Reginald Bishop ("Bishop"), Darin Cook ("Cook"), Randy Russell ("Russell"), Carl Nason ("Nason"), incorrectly sued as Carl Neason, and Peter J. Fifeld ("Fifeld"); and (2) Eighth Amendment claim for the failure to provide adequate medical care against Defendant George Waterson (Waterson").[2]  (Dkt. No. 3 at 8-10.)

Currently pending before the Court is Defendants' motion to dismiss the surviving claims for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. No. 9.)  For the reasons that follow, the Court recommends that Defendants' motion to dismiss be granted in part and denied in part.

---

[1] Page numbers in citations to the complaint refer to the page numbers assigned by the Court's electronic filing system rather than to page numbers in the original document.

[2] In his Decision and Order upon initial review pursuant to 18 U.S.C. § 1915(e), filed on May 8, 2015, Judge Hurd dismissed with prejudice claims for:  (1) failure-to-investigate  in violation of the Fourteenth Amendment against Defendant Fifeld; and (2) illegal search of Plaintiff's cell and confiscation of his legal papers and personal property in violation of his due process rights by Defendants Fifeld, Sally Merkel, Ryan W. Mouthrop, Beau J. Brand, Kevin Premo, Ryan M. Simmons, and Brett J. Derouchie.  Judge Hurd dismissed without prejudice claims for: (1) excessive force against Defendant Rock; (2) medical indifference claims against all Defendants except for Waterson; (3) First Amendment retaliation claims against all Defendants; (4) First Amendment denial of access to the courts against Defendants Bishop and Merkel; and (5) Fourteenth Amendment due process claims against Defendants Fifeld, Bishop, Laramary, King, Zerniak, and Rock relating to a seven-day deprivation order.  (Dkt. No. 3.)  As previously noted, the only claims to survive initial review are those which remaining Defendants Fifeld, Laramary, Zerniak, King, Bishop. Cook, Russell, Nason, and Waterson seek to have dismissed on their pending Rule 12(b)(6) motion.  *Id.*

## II.    FACTUAL BACKGROUND

At the time this action was commenced, Plaintiff was a prison inmate in Department of

Corrections and Community Supervision custody being held at Upstate Correctional Facility

("Upstate").  (Dkt. No. 1 at 1[3].)  Plaintiff alleges in his complaint that on January 14, 2013, while

he was being transported "from and to his cell/room" at Upstate, he was assaulted without

justification by Corrections Officers Cook, Russell, and Nason after Defendants Sergeant Fifeld,

Lieutenants Laramary and King, and Captains Bishop and Zerniak, who were all on duty,

instructed Nason, Cook, and Russell to "put there (sic) hands on plaintiff."  (Dkt. No. 1 at 8.)

Plaintiff has alleged in his complaint that this "use of force was under . . . Bishop['s] control

. . . ." (Dkt. No. 1 at 9.)

In an unsigned affidavit submitted by Plaintiff in opposition to Defendants' motion to

dismiss, Plaintiff contends that while he was in a holding cell, he made a request to see medical

and was told no.  (Dkt. No. 16 at ¶ 5.)  According to Plaintiff, Fifeld stated that he had given

Plaintiff an order to return to his cell and Plaintiff refused.  *Id.*  Laramary, King, and Zerniak

called Bishop, who came to the holding cell.  *Id.*  When Bishop arrived, Plaintiff was on the

floor, and Bishop, King, Laramary, and Zerniak ordered the use of a force team to remove

Plaintiff from the holding cell.  *Id.*  Plaintiff claims that he was "assaulted, beating (sic), hit and

drag (sic) and force (sic) to hop, knowing that Plaintiff could not stand are (sic) walk good."  *Id.*

at ¶ 6.  Plaintiff contends he was assaulted and beaten by Nason, Cook, and Russell under the

---

[3] References to Plaintiff's complaint are to page numbers rather than paragraph numbers since not all of the paragraphs therein are separately numbered.

direction of Bishop, King, Laramary, Zerniak, and Fifeld. *Id*. Plaintiff appears to claim that the excessive force occurred both in the holding cell and on the way back to his cell. (Dkt. No. 16 at ¶¶ 6 and 13.)

Submitted as an exhibit to Plaintiff's complaint is an Inmate Misbehavior Report by K. Premo ("Premo") charging Plaintiff with violations of 106.10 Direct Order, 107.10 Interference, and 109.12 Movement on January 14, 2013. (Dkt. No. 1-1 at 39.) The Report states that Premo gave Plaintiff a direct order to put his back to the holding pen so that he could be taken back to his cell. Plaintiff refused all orders, and the area supervisor was notified. After Plaintiff refused several direct orders from the area supervisor, an extraction team entered the holding pen and escorted Plaintiff back to his cell. *Id*. Plaintiff was found guilty on all three charges. (Dkt. No. 1-1 at 48.)

Defendant Cook submitted an Inmate Misbehavior Report on January 14, 2013, charging Plaintiff with violations of 106.10 direct order and 107.10 interference in connection with the removal of his mechanical restraints after he had been returned to his cell. (Dkt. No. 1 at 40.) That Report, also included as an exhibit to Plaintiff's complaint, states that Cook was part of the extraction team escorting Plaintiff from the holding pen to his cell. According to Cook, when Plaintiff refused to place his hands out of the feed up hatch so that the restraints could be removed, a retention strap was attached to the restraints at which time force became necessary to gain compliance, and the restraints were removed. *Id*. Plaintiff was found guilty of 106.10 refusing direct order, 109.12 movement regulation violation, and interference with employee. (Dkt. No. 1-1 at 47.)

A January 14, 2013, Use of Force Report submitted as an exhibit to Plaintiff's complaint

includes no mention of any force having been used to move Plaintiff from the holding cell back to his cell. (Dkt. No. 1-1 at 17, 19.) The Report refers solely to force used to remove mechanical restraints from Plaintiff's wrists once he had been returned to his cell, and the staff involved are identified as Defendants Cook, Russell, and Nason. *Id.* According to the Report, Plaintiff refused to put his hands through the cell door hatch so the restraints could be removed. *Id.* A corrections officer used a retention strap to pull Plaintiff's hands through the cell hatch and took control of Plaintiff's right wrist with both of his hands, and another corrections officer gained control of Plaintiff's left wrist and held it so the restraints could be removed. *Id.* The facility Superintendent found that the force used was necessary to remove the mechanical restraints. (Dkt. No. 1-1 at 20.)

Plaintiff claims that as a result of the excessive force used in the holding cell and while returning him to his cell from the holding cell, he sustained serious injuries to his back, leg, hand, wrists, arms, hip, thumb, and knee. (Dkt. No. 1 at 9.) Plaintiff claims that Defendant Waterson, who was on duty, "denied [P]laintiff treatment for injuries" suffered during the alleged assault. (Dkt. No. 1 at 8.) A Physical Examination/Treatment – Detail form signed by Waterson and included as a part of the January 14, 2013, Use of Force Report submitted as an exhibit to Plaintiff's complaint, states that Plaintiff was "viewed in cell no injuries noted complains of bilateral wrist pain." (Dkt. No. 1-1 at 10.)

## III. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted" under Rule 12(b)(6). The motion tests the formal legal sufficiency of the complaint by determining whether it conforms to Federal Rule of Civil Procedure 8(a)(2), which

requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972). Satisfaction of the requirement that a plaintiff "show" that he or she is entitled to relief requires that the complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Iqbal,* 556 U.S. at 679 (internal citation and punctuation omitted).

A complaint may be dismissed, pursuant to Rule 12(b)(6), only where it appears that there are not "enough facts to state a claim that is plausible on its face." *Twombly*. 550 U.S. at 570. While Rule 8(a)(2) "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me-accusation." *Iqbal,* 556 U.S. at 678 (citation and internal quotation marks omitted). A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Id*. (citation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In considering a Rule 12(b)(6) motion, "the court considers the complaint, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (citation and internal quotation marks omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (A court may consider "any written instrument attached [to the complaint] as an exhibit or documents incorporated in it by reference."). "The mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual allegations are consistent with the allegations of the plaintiff's complaint." *Robles v. Bleau*, No. 07-CV-0464, 2008 WL 4693153, at *6 and n.41, 2008 U.S. Dist. LEXIS 110029, at *26-27 and n.41 (N.D.N.Y. Oct. 22, 2008)[4] (collecting cases); *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (where a *pro se* is faced with a motion to dismiss, a court may consider materials outside of the complaint "to the extent they are consistent with the allegations in the complaint."), *vacated in part on other grounds*, 317 F. Supp. 2d 160 (N.D.N.Y. 2004); *see also Gil v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (in reviewing district court's dismissal of *pro se* plaintiff's claim, Second Circuit considered plaintiff's affidavit submitted in opposition to motion to dismiss). The Court has taken judicial notice of papers filed in other litigation involving Plaintiff and has considered documents in Plaintiff's submissions in opposition to the extent they are consistent with the allegations in Plaintiff's Amended Complaint.

---

[4] The Court will provide Plaintiff with copies of all unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Where a party is proceeding pro se, the court is obliged to "read [the pro se party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (citations omitted); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (courts remain obligated to construe pro se complaints liberally even after *Twombly*).

Where a pro se complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that a "better pleading will not cure it." *Id.* (citation omitted).

## IV.    ANALYSIS

### A.  Excessive Force Claim

Excessive force claims fall under the Eighth Amendment right against cruel and unusual punishment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010) (per curiam). The Eighth Amendment proscribes punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102, 104 (1976). The lynchpin inquiry in deciding excessive force claims is "whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley*, 475 U.S. at 320-21).

8

Analysis of claims of cruel and unusual punishment, including excessive force claims, requires both objective examination of the conduct's effect and a subjective inquiry into the defendant's motive for his conduct. *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (citing *Hudson*, 503 U.S. at 7-8). In *Wilkens*, 559 U.S. at 39, the Supreme Court emphasized that after *Hudson*, the core judicial inquiry is focused on whether the nature of the force applied was nontrivial rather than the extent of the injury sustained. Therefore, the absence of a serious injury does not necessarily negate a finding of wantonness since

> [w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . . This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury."

*Hudson*, 503 U.S. at 9. Even a *de minimis* use of physical force can constitute cruel and unusual punishment if it is "repugnant to the conscience of mankind." *Id*. at 9-10.

1. <u>Claims Against Defendants Fifeld, Laramary, King, Bishop, and Zerniak</u>

Plaintiff has alleged in conclusory fashion in his complaint that Defendants Fifeld, Laramary, King, Bishop, and Zerniak instructed Nason, Cook, and Russell to "put there (sic) hands on plaintiff." (Dkt. No. 1 at 8.) Plaintiff has also alleged in conclusory fashion in his complaint that the use of force was under Bishop's control. *Id*. In his affidavit, Plaintiff has alleged, also in conclusory fashion, that Laramary, King, Bishop, and Zerniak, ordered the use of a force team to use force to remove him from the holding cell when he had allegedly refused a direct order to go back to his cell. (Dkt. No. 16 at ¶ 5.) With the exception of the allegation that the use of force was under Bishop's control, which is itself conclusory, both Plaintiff's complaint and unsigned affidavit are wholly lacking in factual allegations of specific wrongdoing

attributable to Fifield, Laramary, King, Bishop, and Zerniak. There are no factual allegations plausibly showing that any of those defendants ordered that Nason, Cook, and Russell use excessive force, as opposed to the force necessary to escort Plaintiff back to his cell after he had refused a direct order to return to his cell. (*See* Dkt. No. 16 at ¶ 5.) The documents Plaintiff has submitted as exhibits to his complaint offer no support for his excessive force claims against Fifield, Laramary, King, Bishop, and Zerniak and, in fact, identify the sole use of force as the force used to remove Plaintiff's mechanical restraints.

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). Even reviewing the allegations in Plaintiff's complaint, the exhibits to the complaint, and Plaintiff's affidavit liberally and "interpreting them to raise the strongest arguments they suggest," *see Burgos*, 14 F.3d at 790, the Court is compelled to conclude that Plaintiff's allegations against Fifield, Laramary, King, Bishop, and Zerniak fail to state a plausible Eighth Amendment excessive force claim against those Defendants. The Court therefore recommends that the complaint be dismissed as against Defendants Fifield, Laramary, King, Bishop, and Zerniak, with leave to amend in deference to Plaintiff's pro se status.

### 2. Defendants Nason, Cook, and Russell

Plaintiff claims that he was assaulted in the holding cell and that on the way from the holding cell to his cell he was "assaulted, beating (sic), hit and drag (sic) and force (sic) to hop" by Defendants Nason, Cook, and Russell, who knew he could not walk well. (Dkt. No. 16 at ¶¶ 6 and 16.) Plaintiff has alleged serious injury to his back, leg, hand, wrists, arms, hip, thumb, and knee. (Dkt. No. 1 at 9.) Plaintiff also claims that Defendants were aware that he had a

serious medical condition with his heart, asthma, COPD, his knees, legs, hip, and head, and that

he needed support for walking at the time they "put there (sic) hands on [him] on January 14,

2013."[5]  (Dkt. No. 16 at ¶ 16.)

Although Plaintiff's complaint is lacking in specificity, liberally construed as they must

be, *see Burgos*, 14 F.3d at 790, the allegations that the three Defendants beat and assaulted him,

dragged him, and forced him to hop on the way back to his cell, while knowing of his difficulty

walking and his numerous allegedly serious medical conditions, arguably could indicate that the

corrections officers may have acted wantonly.  (Dkt. Nos. 1 at 8; 16 at ¶ 16.)  Therefore,

although Plaintiff has stated his claim against Nason, Cook, and Russell in largely conclusory

fashion, the Court finds that he has stated enough at this stage to allege a plausible Eighth

Amendment excessive force against the three Defendants and recommends that the Defendants'

motion to dismiss be denied as to that claim.

### B.  Medical Indifference Claim Against Defendant Waterson

Plaintiff claims that Defendant Waterson "denied plaintiff treatment for [his] injuries"

suffered during the alleged assault on Plaintiff on January 14, 2013.  (Dkt. No. 1 at 8.)

Claims that prison officials have intentionally disregarded an inmate's serious medical

needs also fall under the Eighth Amendment umbrella of protection from the imposition of cruel

and unusual punishments.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Prison officials must

---

[5] The exhibits to Plaintiff's complaint show that some modicum of force was used when the three defendants were involved in removing the mechanical restraints on Plaintiff's wrists when he refused to place his hands out of the feed up tray after he had been returned to his cell. (Dkt. No. 1-1 at 17, 19.)  However, there is nothing in the documents submitted with respect to the removal of the mechanical restraints that suggests excessive force, and Plaintiff's complaint appears to focus on excessive force that allegedly occurred on the way back to his cell.

ensure that inmates receive adequate medical care.  *Id.* (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

A claim that prison officials have intentionally disregarded an inmate's serious medical needs has both objective and subjective elements.  *See Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009).  "The plaintiff must show that she or he had a serious medical condition and that it was met with deliberate indifference."  *Id.* at 72 (citation and internal quotation marks omitted). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind."  *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003) (citation omitted).  "[N]ot every lapse in medical care is a constitutional wrong.  Rather, a prison official violates the Eighth Amendment only when the two requirements are met." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citation and internal quotation marks omitted).

A "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain."  *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) (citations omitted); *accord Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).  Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain. *Chance*, 143 F.3d at 702-03.

Under the subjective element, medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, *i.e.*, an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Id*. at 703 (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). "Deliberate indifference requires more than negligence but less than conduct undertaken for the very purpose of causing harm." *Hathaway*, 37 F.3d at 66. To establish deliberate indifference, an inmate must prove that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*,143 F.3d at 702; *see also Salahuddin*, 467 F.3d at 280 (mental state for deliberate indifference "requires that the charged official act or fail to act while actually aware of a substantial risk that serious harm will result.").

Plaintiff has asserted that he was denied treatment by Waterson for "serious" injuries to his back, leg, hand, wrists, arms, hip, thumb, and knee that presented a "condition of urgency." (Dkt. No. 1 at 9, 12.) However, the complaint and exhibits, as well as Plaintiff's affidavit, are devoid of specific factual allegations showing that he suffered from "serious injuries" or presented "a condition of urgency that may produce death, degeneration, or extreme pain." *Nance*, 912 F.2d at 607. There are no facts whatsoever that plausibly show the existence of injuries a doctor would find important and worthy of treatment as a result of the alleged excessive force; that Plaintiff sustained injuries that significantly affected his daily activities; or that Plaintiff was in substantial pain as a result of injuries. *See Chance*, 143 F.3d at 702-03. Nor has Plaintiff identified any other factors supporting his claim of serious medical condition.

In addition, Plaintiff has failed to allege facts plausibly showing that Waterson acted with

deliberate indifference to Plaintiff's alleged serious medical conditions. *See Smith*, 316 F.3d at 183-84. Plaintiff has not alleged any facts that suggesting that Waterson was aware of facts from which the inference could be drawn that Plaintiff had a serious medical need, that Waterson drew that inference, *see Farmer*, 511 U.S. at 837, and that he showed "a conscious disregard of a substantial risk of harm" to Plaintiff.[6] *See Chance*, 143 F.3d at 702-03.

Based upon the foregoing, the Court concludes that Plaintiff has failed to state an Eighth Amendment claim for medical indifference against Waterson and recommends dismissal of the complaint against him with leave to amend in deference to Plaintiff's pro se status.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendants' Rule 12(b)(6) motion (Dkt. No. 9) to dismiss Plaintiff's complaint for failure to state a claim be **GRANTED IN PART AND DENIED IN PART**; and it is further

**RECOMMENDED** that Defendants' motion to dismiss (Dkt. No. 9) be **GRANTED** as to Plaintiff's Eighth Amendment excessive force claim against Defendants Fifeld, Laramary, King, Bishop, and Zerniak, and Eighth Amendment failure to provide adequate medical care claim against Defendant Waterson; and that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITH LEAVE TO AMEND** against Fifeld, Laramary, King, Bishop, Zerniak, and Waterson; and it is further

**RECOMMENDED** that Defendants' motion to dismiss (Dkt. No. 9) be **DENIED** as to

---

[6] According to the Physical Examination/Treatment – Detail form completed by Waterson on January 14, 2013, based upon his observation of Plaintiff in his cell, no injuries were noted, although Plaintiff complained of bilateral wrist pain. (Dkt. No. 1-1 at 20.)

Plaintiff's Eighth Amendment excessive force claim against Defendants Nason, Cook, and Russell; and it is hereby

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with a copy of the unpublished decision in *Robles v. Bleau*, No. 07-CV-0464, 2008 WL 4693153 (N.D.N.Y. Oct. 22, 2008), in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: January 5, 2016
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

2008 WL 4693153
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Raymond ROBLES, Plaintiff,
v.
K. BLEAU, Correctional Officer, Riverview C.F.;
Peacock, Correctional Sergeant, Riverview C.F.;
R. Varkiar, Senior Counsel, Riverview C.F.; and
New York State Dep't of Corr. Servs., Defendants.

No. 9:07-CV-0464. | Oct. 22, 2008.

**Attorneys and Law Firms**

Raymond Robles, Cape Vincent, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State of
New York, David L. Cochran, Esq., of Counsel, New York,
NY, for Defendants.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior District Judge.

 **\*1** This *pro se* civil rights action, brought pursuant
to 42 U.S.C. § 1983, was referred to the Hon. George
H. Lowe, United States Magistrate Judge, for a Report-
Recommendation pursuant to 28 U.S.C. § 636(b) and Local
Rule 72.3(c).

The Report-Recommendation dated September 12, 2008
recommended that Defendants motion to dismiss be
granted in part and denied in part. Specifically, Judge
Lowe recommended that Plaintiff's Fourteenth Amendment
procedural due process claim against Defendant Varkiar
regarding his disciplinary hearing be dismissed if, within
thirty (30) days from the filing of this Final Order, Plaintiff
does not file an Amended Complaint that successfully states a
Fourteenth Amendment procedural due process claim. It was
recommended that Plaintiff's remaining claims be dismissed
with prejudice.

Plaintiff filed objections to the Report-Recommendation,
essentially raising the same arguments presented to the
Magistrate Judge.

When objections to a magistrate judge's Report-
Recommendation are lodged, the Court makes a *"de novo*
determination of those portions of the report or specified
proposed findings or recommendations to which objection is
made."*See* 28 U.S.C. § 636(b)(1). After such a review, the
Court may "accept, reject, or modify, in whole or in part, the
findings or recommendations made by the magistrate judge.
The judge may also receive further evidence or recommit the
matter to the magistrate judge with instructions."*Id.*

Having reviewed the record *de novo* and having considered
the issues raised in the Plaintiff's objections, this Court
has determined to accept and adopt the recommendation of
Magistrate Judge Lowe for the reasons stated in the Report-
Recommendation.

It is therefore

**ORDERED** that Defendants motion to dismiss be
**GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**

***REPORT-RECOMMENDATION***

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, commenced pursuant
to 42 U.S.C. § 1983, has been referred to me by the Honorable
Thomas J. McAvoy, Senior United States District Judge, for
Report and Recommendation with regard to any dispositive
motions filed, pursuant to 28 U.S.C. § 636(b) and Local
Rule 72.3(c). Generally, in his Complaint, Raymond Robles
("Plaintiff") alleges that three employees of the New York
State Department of Correctional Services ("DOCS"), as
well as DOCS itself, violated his rights under the Eighth
and Fourteenth Amendments when they (1) required him to
submit to a random urinalysis test when they knew he was
taking a medication that would prevent him from providing a
urine sample, and (2) charged, convicted, and punished him
with eighty-seven days in a Special Housing Unit for refusing
to provide a urine sample. (*See generally*Dkt. No. 1 [Plf.'s
Compl.].) Currently pending before the Court is Defendants'
motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). (Dkt. No. 16.)For the reasons that
follow, I recommend that Defendants' motion be granted in
part and denied in part.

# I. BACKGROUND

## A. Summary of Plaintiff's Complaint

 **\*2** As Defendants correctly observe in their Memorandum of Law, Plaintiff's Complaint-which describes the events giving rise to his claims in two brief paragraphs without identifying any role played by Defendants in those events-is hardly a model of *fair notice* under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 1, ¶¶ 6-7 [Plf.'s Compl.].) However, as explained below in Part II of this Report-Recommendation, the mandate to read the papers of *pro se* civil rights litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint. [1] Here, I find that the factual allegations contained in Plaintiff's Response Affidavit are consistent with the factual allegations of his Complaint. As a result, in construing Plaintiff's Complaint, I will consider his Response Affidavit as effectively amending the factual allegations of his Complaint. Thus construed, Plaintiff's Complaint alleges as follows:

1. On November 6, 2006, at about 7:28 a.m., Plaintiff was directed to report to the drug testing center at Riverview C.F.; [2]

2. Upon arriving at the drug testing center, Plaintiff was informed by Correctional Officer K. Bleau ("Defendant Bleau") that he had been randomly selected to submit to urinalysis drug testing; [3]

3. Defendant Bleau asked Plaintiff if he would provide a urine sample, and Plaintiff responded yes; [4]

4. Defendant Bleau then asked Plaintiff if he was taking any medications, and Plaintiff explained that (1) yes, he was taking Flomax and Omeprazole due to a prostate condition and a stomach problem, and (2) "d[ue] to the medication [s]" and the fact that he had used the bathroom at approximately 7:10 a.m. that morning, he would need more water in order to urinate; [5]

5. As Plaintiff was explaining these facts to Defendant Bleau, Defendant Bleau became upset and walked away from Plaintiff; [6]

6. When he returned, Defendant Bleau then informed Plaintiff that, pursuant to DOCS Directive 4937, Plaintiff had three hours provide a urine sample or he would be considered to be refusing to provide the urine sample; [7]

7. Defendant Bleau then gave Plaintiff a cup of water at approximately 7:30 a.m., and a second cup of water at approximately 9:30 a.m., but did not give him a third cup of water at approximately 8:30 a.m., as required by Part D.4. of DOCS Directive 4937; [8]

8. At approximately 10:30 a.m., Plaintiff was still unable to provide a urine sample; [9]

9. At that time, Defendant Bleau notified Correctional Sergeant Peacock ("Defendant Peacock") that Plaintiff was refusing a direct order to provide a urine sample; [10]

10. When Plaintiff tried to explain to Defendant Peacock that his medical condition prevented him from providing the urine sample, Defendant Peacock responded, "Shut up and put [your] hands behind [your] back"; [11]

 **\*3** 11. Both Defendants Bleau and Peacock failed to investigate or inquire as to why Plaintiff had been prescribed Flomax or Omeprazole, or what the potential side effects of those drugs were, although that information was readily obtainable from medical staff at Riverview C.F.; [12]

12. Instead, Defendants Bleau and/or Peacock escorted Plaintiff to the Riverview C.F. Special Housing Unit ("S.H.U."); [13]

13. On November 7, 2006, at about 8:55 a.m., while Plaintiff was in S.H.U., he was served with a copy of a misbehavior report authored by Defendant Bleau, charging him with (1) failing to comply with the urinalysis testing procedure, and (2) refusing a direct order to provide a urine sample; [14]

14. On November 10, 2006, Senior Correctional Counselor R. Varkiar conducted Plaintiff's disciplinary hearing on the misbehavior report; [15]

15. At the hearing, when Plaintiff entered a plea of "Not guilty, with an explanation," Defendant Varkiar gave Plaintiff "an opportunity to explain [him] self"; [16]

16. Plaintiff explained that he had a medical condition that prevented him from providing a urine sample, that he had attempted to inform Defendant Bleau of this medical condition (but Defendant Bleau walked away from Plaintiff), and that he had attempted to inform Defendant Peacock of this medical condition (but Defendant Peacock told Plaintiff to "[s]hut up"); [17]

17. Defendant Varkiar then made a telephone call; when he was done with the call, he told Plaintiff that (1) he had called the medical unit at Riverview C.F. to ask whether or not the medication that Plaintiff was taking would prevent him from urinating, and (2) someone in the medical unit had responded that no, the medication should not prevent Plaintiff from urinating; [18]

18. Plaintiff then attempted to explain to Defendant Varkiar *why* he was taking one of the medications, specifically, to remedy a prostate problem that itself interfered with his ability to urinate; [19]

19. However, Defendant Varkiar failed to call back the person in the medical unit at Riverview C.F. and request that he or she again answer the question he had posed before, taking into account Plaintiff's prostate condition as shown by his medical records; [20]

20. As a result, Defendant Varkiar found Plaintiff guilty of both disciplinary charges, and sentenced him to ninety (90) days in S.H.U ., with a corresponding loss of privileges; [21]

21. At the conclusion of the hearing, Plaintiff received a written copy of the hearing disposition, which stated that the evidence relied on included (1) the statements in the written misbehavior report of Defendant Bleau (which Defendant Varkiar stated were credible), and (2) Plaintiff's own hearing testimony (which Defendant Varkiar stated was not credible); [22]

22. On November 27, 2006, Plaintiff appealed his conviction to DOCS Director of Special Housing, Donald Selsky, who reversed the conviction on January 19, 2007; [23] and

**\*4** 23. On February 1, 2007, Plaintiff was finally released from S.H.U., after spending eighty-seven (87) days there. [24]

It should be noted that, in addition to asserting constitutional claims against Defendants Bleau, Peacock, and Varkiar in their individual or personal capacities, Plaintiff's Complaint asserts a constitutional claim also against DOCS itself. It should also be noted that, as relief for Defendants' actions, Plaintiff requests money damages but no injunctive relief. [25]

### B. Summary of Grounds in Support of Defendants' Motion

Generally, Defendants' motion to dismiss for failure to state a claim is premised on two grounds: (1) Plaintiff's claim against DOCS is barred by the Eleventh Amendment; and (2) the allegations of Plaintiff's Complaint are too lacking in detail to give Defendants *fair notice* under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 16, Part 2, at 2-5 [Defs.' Memo. of Law].)

## II. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

Under Fed.R.Civ.P. 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."Fed.R.Civ.P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); [26] or (2) a challenge to the legal cognizability of the claim. [27]

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief."Fed.R.Civ.P. 8(a)(2) [emphasis added]. By requiring this "showing," Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." [28] The main purpose of this rule is to "facilitate a proper decision on the merits." [29] A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." [30]

The Supreme Court has long characterized this pleading requirement under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement. [31] However, it is well established that even this liberal notice pleading standard "has its limits." [32] As a result, several Supreme Court decisions, and Second Circuit

decisions, exist holding that a pleading has failed to meet this liberal notice pleading standard. [33]

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly,* the Supreme Court, in reversing an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1, "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."550 U.S. 544, ---- - ----, 127 S.Ct. 1955, 1968-69, 167 L.Ed.2d 929 (2007). [34] Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the Fed.R.Civ.P. 8 "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74.

**\*5** More specifically, the Court reasoned that, by requiring that a pleading "show[ ] that the pleader is entitled to relief,"Fed.R.Civ.P. 8(a)(2) requires that the pleading give the defendant "fair notice" of (1) the nature of the claim and (2) the "grounds" on which the claim rests. *Id.* at 1965, n. 3 [citation omitted]. While this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading contain at least "some factual allegation[s]." *Id.* [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of course, that all the allegations in the complaint are true. *Id.* at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]."*Id.*

As have other Circuits, the Second Circuit has repeatedly recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, not merely antitrust claims brought under 15 U.S.C. § 1 (as were the claims in *Twombly* ). [35] The Second Circuit has also recognized that this *plausibility* standard governs claims brought even by *pro se* litigants (although the plausibility of those claims is be assessed generously, in light of the special solicitude normally afforded *pro se* litigants). [36]

It should be emphasized that Fed.R.Civ.P. 8's plausibly standard, explained in *Twombly,* was in no way retracted

or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which the Court stated, "Specific facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a)(2).*Erickson v. Pardus,* 551 U.S. 89, ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) [citation omitted]. That statement was merely an abbreviation of the often-repeated point of law-first offered in *Conley* and repeated in *Twombly*-that a pleading need not "set out in detail the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley v. Gibson,* 355 U.S. 41, 47 [1957] ). That statement in no way meant that all pleadings may achieve the requirement of giving a defendant "fair notice" of the nature of the claim and the "grounds" on which the claim rests without ever having to allege any facts whatsoever. [37] There must still be enough fact alleged to raise a right to relief above the speculative level to a plausible level, so that the defendant may know what the claims are and the grounds on which they rest (in order to shape a defense).

Having said all of that, it should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." [38] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se.*" [39] In other words, as stated above, while all pleadings are to be construed liberally under Fed.R.Civ.P. 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality . [40]

**\*6** For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint. [41] Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." [42] Furthermore, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." [43] Of course, an opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." [44] In addition, granting a

*pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading. [45]

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit very recently observed), [46] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12. [47] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow. [48] Stated more plainly, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." [49]

### III. ANALYSIS

### A. Whether Plaintiff's Claim Against DOCS is Barred by the Eleventh Amendment

For the reasons offered by Defendants in their Memorandum of Law, I agree with them that Plaintiff's constitutional claims against Defendant DOCS are barred by the Eleventh Amendment to the United States Constitution. (Dkt. No. 16, Part 2, at 2-3 [Defs.' Mem. of Law].) In the interest of brevity, I will not repeat the well-established points of law that they correctly cite in support of their argument. Instead, I will only add three points that Defendants do *not* make in their succinct argument: (1) where it has been successfully demonstrated that a defendant is entitled to sovereign immunity under the Eleventh Amendment, the federal court lacks subject matter jurisdiction over the case (or claim), and "the case [or claim] *must* be stricken from the docket"; [50] (2) Plaintiff's civil rights claims against Defendant DOCS (an entity) are barred also by the express language of 42 U.S.C. § 1983, which confers liability upon only any *"person* who ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws .... " [51]; and (3) because the defect with this claim is substantive rather than merely formal, better pleading will not cure it, and thus it should be dismissed with prejudice. [52]

**\*7** For all of these reasons, I recommend that the Court dismiss with prejudice Plaintiff's claims against Defendant DOCS.

It should be noted that, in addition to barring Plaintiff's constitutional claims against Defendant DOCS, the Eleventh Amendment would also bar any claim by Plaintiff against Defendants Bleau, Peacock and Varkiar in their official capacities. [53] However, because I do not even liberally construe Plaintiff's Complaint (and Response Affidavit) as asserting such claims, no need exists to recommend the dismissal of those claims. (*See generally* Dkt. No 1, 17.)

### B. Whether the Allegations of Plaintiff's Complaint Are Too Lacking in Detail to Give Defendants *Fair Notice* under Fed.R.Civ.P. 8(a)(2)

For the reasons offered by Defendants in their Memorandum of Law, I agree with them that Plaintiff's Complaint-when considered alone-is too lacking in detail to give Defendants the fair notice that is required under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 16, Part 2, at 3-5 [Defs.' Mem. of Law].) However, as explained above in Part II of this Report-Recommendation, the mandate to read the papers of *pro se* civil rights litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint. [54] Here, when construing Plaintiff's Complaint together with his Response Affidavit, I find that Plaintiff's allegations *are* detailed enough to give Defendants the fair notice that is required under Fed.R.Civ.P. 8(a)(2).*See, supra,* Part I.A. of this Report-Recommendation.

However, this does not end the Court's analysis of Plaintiff's Complaint because, even where a defendant has not advanced a certain argument on a motion to dismiss in a *pro se* prisoner civil rights case, a district court may (and, indeed, has a duty to) *sua sponte* address whether the pleading in such a case has successfully stated a claim upon which relief may be granted. [55] Here, Plaintiff's Complaint is plagued by several defects (some substantive and some formal) [56] that simply cannot be overlooked.

### C. Whether Plaintiff Has Stated an Actionable Claim Against Defendants Bleau, Peacock and Varkiar Arising Out of Plaintiff's Being Required to Provide a Urine Sample Given Their Knowledge of His Medications and/ or Medical Condition

Among Plaintiff's claims is a claim that "[i]t is neither lawful nor [ ] reasonable to expect an Inmate to perform

a bodily function on command when you know or should know that his medical condition and prescribed treatment plan indicate that when he urinates[,] and when he [can] not[,] can be beyond his control."(Dkt. No. 17, at 5 [Plf.'s Response Affid.].) I liberally construe this claim as one of harassment or perhaps inadequate-prison-conditions under the Eighth Amendment. (To the extent that this allegation is also used to support a procedural due process claim under the Fourteenth Amendment, I address that claim below in Parts III.D. and III.E. of this Report-Recommendation.)

 **\*8** The problem with Plaintiff's Eighth Amendment claim is that the rather detailed facts alleged by him in support of that claim do not suggest in any way that any of the three individual Defendants were acting with the sort of mental state that is required for them to incur liability under the Eighth Amendment, namely, *deliberate indifference.*Deliberate indifference is a state of mind akin to *criminal recklessness,* which involves *knowing* of and disregarding an excessive risk to inmate health or safety. [57] Here, Plaintiff himself alleges that the three individual Defendants did not in fact *understand* that he could not urinate due to his prostate condition. Indeed, as he was trying to explain his medical condition to Defendants, (1) Defendant Bleau became angry and "walked away" from Plaintiff, (2) Defendant Peacock told Plaintiff to "[s]hut up," and (3) Defendant Varkiar failed to call back the person in the medical unit of Riverview C.F. and ask him or her to report (to Varkiar) the impact of Plaintiff's prostate condition on his ability to urinate. *See, supra,* Part I.A. of this Report-Recommendation. [58]

At its heart, Plaintiff's Eighth Amendment claim alleges that the three individual Defendants *should have known* that he could not urinate during the time in question due to his enlarged prostate, but that they did not know that fact because they *failed to investigate* the nature and effects of his prostate condition. In other words, his Eighth Amendment claim is one of *negligence.*Such a claim is simply not actionable under the Eighth Amendment (or any constitutional provision). As is often observed, "[D]eliberate indifference describes a state of mind more blameworthy than negligence." [59] Finally, because the defect with this detailed claim is substantive rather than merely formal, I find that better pleading will not cure it. [60]

For all of these reasons, I recommend that the Court dismiss with prejudice Plaintiff's Eighth Amendment claim.

### D. Whether Plaintiff Has Stated an Actionable Claim Against Defendants Bleau and Peacock Arising Out of His Receipt of an Erroneous or False Misbehavior Report

It is well established that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report."*Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997) (citing *Freeman v. Rideout,* 808 F.2d 949, 951 [2d Cir.1986] ). [61] Rather, the only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is when there is "more, such as retaliation against the prisoner for exercising a constitutional right."*Boddie,* 105 F.3d at 862;*accord, Murray v. Pataki,* 03-CV-1263, 2007 U.S. Dist. LEXIS 26959, at *26, 2007 WL 965345 (N.D.N.Y. March 5, 2007) (Treece, M.J.) [citations omitted].

Here, Plaintiff alleges no actionable conduct regarding his being issued the misbehavior report in question, such as retaliation against him for exercising a constitutional right. *See, supra,* Part I.A. of this Report-Recommendation. Moreover, because the defect with this detailed claim is substantive rather than merely formal, I find that better pleading will not cure it. [62]

 **\*9** For these reasons, I recommend that the Court dismiss with prejudice Plaintiff's Fourteenth Amendment false-misbehavior-report claim.

### E. Whether Plaintiff Has Stated an Actionable Claim Against Defendant Varkiar Arising Out of Plaintiff's Erroneous or Unjustified Disciplinary Conviction

"[Courts] examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State ...; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient .... " *Kentucky Dept. of Corr. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). With regard to the first question, in 1995, the Supreme Court held in *Sandin v. Connor* that liberty interests protected by the Fourteenth Amendment's Due Process Clause will not arise from the use of mandatory language of a particular state law or regulation, but "will generally be limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

*Sandin v. Connor,* 515 U.S. 472, 483-484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

Here, Plaintiff alleges that the disciplinary hearing conducted by Defendant Varkiar resulted in a sentence of eighty-seven (87) days in the Riverview C.F. S.H.U. with a corresponding loss of privileges. *See, supra,* Part I.A. of this Report-Recommendation. Numerous district courts in this Circuit have issued well-reasoned decisions finding no atypical and significant hardship experienced by inmates who served sentences in S.H.U. of far more than the eighty-seven (87) days alleged here-even where the conditions of confinement in the S.H.U. were, to varying degrees, more restrictive than those in the prison's general population. [63] As a result, I find that Plaintiff has not alleged facts plausibly suggesting that he possessed, during the disciplinary hearing, a liberty interest that was protected by the Fourteenth Amendment.

However, such a finding leads only to a recommendation that this claim be dismissed *without* prejudice. This is because it is conceivable to me that Plaintiff's Complaint and Response Affidavit-which are silent with regard to the conditions of confinement he experienced in the Riverview C.F. S.H.U.-may be amended so as to allege facts plausibly suggesting that those conditions were so restrictive as to impose on Plaintiff an *atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life* (thus conferring on him a protected liberty interest under the Fourteenth Amendment).

I should also point out that, even assuming (for the sake of argument) that Plaintiff possessed a protected liberty interest with regard to his disciplinary hearing, I find that he has alleged facts plausibly suggesting that he was, in fact, given all the process that he was due under the circumstances. Specifically, Plaintiff alleges that he was given the following: (1) timely notice of the misbehavior report: (2) an "opportunity to explain [him]self" at his disciplinary hearing; (3) a written disciplinary hearing disposition; (4) a disciplinary hearing disposition that was based on at least some evidence (e.g., his own hearing testimony, which Defendant Varkiar found to be not credible); and (5) an opportunity to appeal the disciplinary hearing disposition (which he did so successfully).*See, supra,* Part I.A. of this Report-Recommendation.

**\*10** Of course, the defect that Plaintiff alleges occurred at his disciplinary hearing was Defendant Varkiar's failure to use the telephone to call back the person in the medical unit at Riverview C .F. and request that he or she again answer the question of whether Plaintiff was physically unable to urinate, taking into account his prostate condition as shown by his medical records. *Id.* Generally, it is not the duty of an impartial hearing officer to conduct an investigation of the merit of the disciplinary charges against an inmate; rather, the duty of a hearing officer is merely to review the evidence presented to him at the disciplinary hearing, and in *certain circumstances* identify defense witnesses for the inmate. [64] Here, I find that Plaintiff has alleged no circumstances conferring on Defendant Varkiar a duty to call back the medical unit at Riverview C.F. For example, I find that Plaintiff's Complaint and Response Affidavit are devoid of any allegation that, at his disciplinary hearing, he requested and was denied an adjournment of the hearing so that, with the help of a legal assistant, he could obtain his medical records and call as a witness a member of the medical unit, in order that he himself could introduce testimony that his prostate condition prevented him from urinating during the time in question. *See, supra,* Part I.A. of this Report-Recommendation. However, again, such a finding leads only to a recommendation that this claim be dismissed *without* prejudice, because it is conceivable to me that Plaintiff's Complaint and Response Affidavit may be amended to allege facts plausibly suggesting that, at his disciplinary hearing, he made, and was denied, such a request.

For these reasons, I recommend that the Court dismiss Plaintiff's Fourteenth Amendment procedural due process claim regarding his disciplinary hearing if, within thirty (30) days from the date of the Court's final Order on this Report-Recommendation, Plaintiff does not file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing.

Finally, two points bear mentioning. First, to the extent that Plaintiff is attempting to allege that his procedural due process rights were violated at his disciplinary hearing also because Defendant Bleau violated Part D.4. of DOCS Directive 4937 by giving Plaintiff only two cups of water during the three-hour period in question, that allegation is not actionable under the circumstances. Section 1983 provides, in pertinent part, "Every person who ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by *the Constitution and laws,* shall be liable to the party injured ...." 42 U.S.C. § 1983 [emphasis added]. The term "the Constitution and laws" refers to the United States Constitution and *federal* laws. [65] A violation of

a state law or regulation, *in and of itself,* does not give rise to liability under 42 U.S.C. § 1983. [66] Furthermore, the violation of a DOCS Directive, alone, is not even a violation of New York State law or regulation; [67] this is because a DOCS Directive is "merely a system the [DOCS] Commissioner has established to assist him in exercising his discretion," which he retains, despite any violation of that Directive. [68]

**\*11** Second, in making the above recommendation (that Plaintiff be required to file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing, upon penalty of dismissal), I am in no way "issuing specific instructions [to Plaintiff] mandating the content and format of the putative amended complaint"-instructions that the Second Circuit recently found erroneous in the case of *Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at \*6 (2d Cir. Aug.12, 2008). Rather, I am merely reporting my finding that Plaintiff's current Fourteenth Amendment procedural due process claim regarding his disciplinary hearing fails to state a claim upon which relief might be granted, as pleaded.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 16) be **GRANTED in part** and **DENIED in part** in the following respects:

(1) Plaintiff's Fourteenth Amendment procedural due process claim against Defendant Varkiar regarding his disciplinary hearing be **DISMISSED** if, within thirty (30) days from the date of the Court's final Order on this Report-Recommendation, Plaintiff does not file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing; and

(2) The other claims asserted in Plaintiff's Complaint (as effectively amended by his Response Affidavit) be **DISMISSED** with prejudice, and without condition.

**ANY OBJECTIONS to this Report-Recommendation must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from the date of this Report-Recommendation (unless the third calendar day is a legal holiday, in which case add a fourth calendar day).***See*28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); N.D.N.Y. L.R. 72.1(c); Fed.R.Civ.P. 6(a) (2), (d).

**BE ADVISED that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/ or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance.** [69]

**BE ALSO ADVISED that the failure to file timely objections to this Report-Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of judgment that will be entered.***Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of H.H.S.,* 892 F.2d 15 [2d Cir.1989] ).

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 4693153

Footnotes

30  *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,*113 F.3d 1229 (2d Cir.1997) (unpublished table opinion), *accord, Hudson v. Artuz,* 95-CV-4768, 1998 WL 832708, at \*2 (S.D.N.Y. Nov.30, 1998), *Flores v. Bessereau,* 98-CV-0293, 1998 WL 315087, at \*1 (N.D.N.Y. June 8, 1998) (Pooler, J.). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 [2d Cir.1996] ).

1   *See, infra,* note 41 of this Report-Recommendation (citing cases).

2   (Dkt. No. 17, at 4 [Plf.'s Response Affid.].)

3   (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.].)

4   (Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 8 [Ex. 1 to Plf.'s Response Affid., attaching completed form entitled, "Request for Urinalysis Test"].)

5　(Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 8 [Ex. 1 to Plf.'s Response Affid., attaching completed form entitled, "Request for Urinalysis Test"]; Dkt. No. 17, at 14 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

6　(Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 14 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

7　(Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 10 [Ex. 3 to Plf.'s Response Affid., attaching page from DOCS Directive 4937].)

8　(Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 4, 5 [Plf.'s Response Affid., attaching page from DOCS Directive 4937].)

9　(Dkt. No. 1, ¶¶ 6-7 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid., attaching Inmate Misbehavior Report].)

10　(Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid., attaching Inmate Misbehavior Report].)

11　(Dkt. No. 17, at 5 [Plf.'s Response Affid.].)

12　(Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 4, 5 [Plf.'s Response Affid.]; Dkt. No. 17, at 9 [Ex. 2 to Plf.'s Response Affid., attaching page of his Ambulatory Health Record].)

13　(Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 5 [Plf.'s Response Affid.].)

14　(Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid., attaching Inmate Misbehavior Report].)

15　(Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

16　(Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

17　(*Id.*)

18　(Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition]; Dkt. No. 17, at 15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

19　(Dkt. No. 17, at 2-3 [Plf.'s Response Affid.]; Dkt. No. 17, at 14-15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006; Dkt. No. 17, at 17 [Ex. 6 to Plf.'s Response Affid., attaching page of information about Flomax].)

20　(Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 17 [Ex. 6 to Plf.'s Response Affid., attaching page of information about Flomax].)

21　(Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

22　(Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition]; Dkt. No. 17, at 3 [Plf.'s Response Affid.].)

23　(Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3-4 [Plf.'s Response Affid.]; Dkt. No. 17, at 15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006; Dkt. No. 17, at 16 [Ex. 8 to Plf.'s Response Affid., attaching Donald Selsky's Review of Superintendent's Hearing, issued on January 19, 2007].)

24　(Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 2 [Plf.'s Response Affid.].)

25　(Dkt. No. 1, ¶ 6 [Plf.'s Compl.].)

26　*See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

27　*See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as

a matter of law.") [citation omitted]; *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ( "Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ].") [citation omitted]; *Util. Metal Research & Generac Power Sys.,* 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5, 2004 WL 2613993 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a] ); *accord,* Straker v. Metro Trans. Auth.,331 F.Supp.2d 91, 101-102 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.,* 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7, 2002 WL 313156 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b] [6] motion-one aimed at the sufficiency of the pleadings under Rule 8 [a], and the other aimed at the legal sufficiency of the claims).

**28** *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 1634, 161 L.Ed.2d 577 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz,* 534 U .S. at 512 [citation omitted]; *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) [citation omitted].

**29** *Swierkiewicz,* 534 U.S. at 514 (quoting *Conley,* 355 U.S. at 48);*see also Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

**31** *See, e.g., Swierkiewicz,* 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

**32** 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed.2003).

**33** *See, e.g., Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, ---- - ----, 127 S.Ct. 1955, 1964-1974, 167 L.Ed.2d 929 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord, Dura Pharmaceuticals,* 125 S.Ct. at 1634-1635, *Christopher v. Harbury,* 536 U.S. 403, 416-422, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 234-235 (2d Cir.2004), *Gmurzynska v. Hutton,* 355 F.3d 206, 208-209 (2d Cir.2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz. See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.,* No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr.26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2] ). Although these decisions are not themselves precedential authority, *see*Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz,* of certain cases from within the Second Circuit interpreting Rule 8(a)(2).*See Khan v. Ashcroft,* 352 F.3d 521, 525 (2d Cir.2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS,* 244 F.3d 81 [2d Cir.2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr,* 533 U.S. 289 [2001 ] ).

**34** The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negativing gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint....*Conley,* then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."*Twombly,* 127 S.Ct. at 1969.

**35** *See, e.g., Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (in civil rights action, stating that "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim upon relief that is plausible on its face.'") [citation omitted]; *Goldstein v. Pataki,* 07-CV-2537, 2008 U.S.App. LEXIS 2241, at *14, 2008 WL 269100 (2d Cir. Feb. 1, 2008) (in civil rights action, stating that "*Twombly* requires ... that the complaint's '[f]actual allegations be enough to raise a right to relief above the speculative level ....' ") [internal citation omitted]; *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98, n. 2 (2d Cir.2007) ("We have declined to read Twombly's flexible 'plausibility standard' as relating only to antitrust cases.") [citation omitted]; *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (in prisoner civil rights action, stating, "[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly* ] is ... requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.'*) [emphasis in original].

**36** *See, e.g., Jacobs v. Mostow,* 281 F. App'x 85, 87 (2d Cir. March 27, 2008) (in pro se action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim up relief that is plausible on its face.'") [citation omitted] (summary order, cited in accordance with Local Rule 32.1[c][1] ); *Boykin v. KeyCorp.,* 521 F.3d 202, 215-16

(2d Cir.2008) (finding that borrower's *pro se* complaint sufficiently presented a *"plausible"* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

37    For example, in *Erickson,* a district court had dismissed a *pro se* prisoner's civil rights complaint because, although the complaint was otherwise factually specific as to how the prisoner's hepatis C medication had been wrongfully terminated by prison officials for a period of approximately 18 months, the complaint (according to the district court) failed to allege facts plausibly suggesting that the termination caused the prisoner "substantial harm." 127 S.Ct. at 2199. The Supreme Court vacated and remanded the case because (1) under Fed.R.Civ.P. 8 and *Twombly,* all that is required is a "a short and plain statement of the claim" sufficient to "give the defendant fair notice" of the claim and "the grounds upon which it rests," and (2) the plaintiff had alleged that the termination of his hepatitis C medication for 18 months was "endangering [his] life" and that he was "still in need of treatment for [the] disease."*Id.* at 2200.While *Erickson* does not elaborate much further on its rationale, a careful reading of the decision (and the dissent by Justice Thomas) reveals a point that is perhaps so obvious that it did not need mentioning in the short decision: a claim of deliberate indifference to a serious medical need under the Eighth Amendment involves two elements, i.e., the existence of a sufficiently serious medical need possessed by the plaintiff, and the existence of a deliberately indifferent mental state possessed by prison officials with regard to that sufficiently serious medical need. The *Erickson* decision had to do with only the first element, not the second element. *Id.* at 2199-2200.In particular, the decision was merely recognizing that an allegation by a plaintiff that, during the relevant time period, he suffered from hepatis C is, in and of itself, a factual allegation plausibly suggesting that he possessed a sufficiently serious medical need; the plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication. *Id.* This point of law is hardly a novel one. For example, numerous decisions, from district courts within the Second Circuit alone, have found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e .g., Rose v. Alvees,* 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept.9, 2004); *Verley v. Goord,* 02-CV-1182, 2004 WL 526740, at *10 n. 11 (S.D.N.Y. Jan.23, 2004); *Johnson v. Wright,* 234 F.Supp.2d 352, 360 (S.D.N.Y.2002); *McKenna v. Wright,* 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord,* 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).

38    *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994).

39    *Hernandez,* 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir.1999) [citation omitted].

40    *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[A] *pro se* complaint ... must be held to less stringent standards than formal pleadings drafted by lawyers ....") [internal quotation marks and citation omitted]; *McEachin v. McGinnis,* 357 F.3d 197, 200 (2d Cir.2004) ("[W]hen the plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.") [citation omitted].

41    "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum."*Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov.17, 1997) (citing, *inter alia, Gil v. Mooney,* 824 F.2d 192, 195 [2d Cir.1987] [considering plaintiff's response affidavit on motion to dismiss] ). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.' " *Donhauser v. Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds,*317 F.Supp.2d 160 (N.D.N.Y.2004). This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading-which a motion to dismiss is not. *See Washington v. James,* 782 F.2d 1134, 1138-39 (2d Cir.1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted].

42    *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and citation omitted].

43    *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) [internal quotation and citation omitted]; *see also*Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

44    *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support

its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted]

45    *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *2, n. 14 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *5, n. 34 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons,* 05-CV-0904, 2007 WL 37404, at *4, n. 30 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Goros v. Cent. Office Review Comm.,* 03-CV-0407, 2006 WL 2794415, at *5, n. 18 (N.D.N.Y. Sept., 26, 2006) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Williams v. Weaver,* 03-CV-0912, 2006 WL 2799417, at *4, n .16 (N.D.N.Y. Sept. 26, 2006) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

46    *See Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug.12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training ... should not be impaired by harsh application of technical rules.") [citation omitted].

47    *See Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner,* 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with *Fed.R.Civ.P. 8*) ); *accord, Shoemaker v. State of Cal.,* 101 F.3d 108 (2d Cir.1996) (citing *Prezzi v. Schelter,* 469 F.2d 691] [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter,* 469 F.2d 691, within the Second Circuit]; *accord, Praseuth v. Werbe,* 99 F.3d 402 (2d Cir.1995).

48    *See McNeil v. U.S.,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California,* 422 U.S. 806, 834, n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich,* 408 F.3d 124, 128, 130 (2d Cir.2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with *Rules 8* and *10* if his mistakes either "undermine the purpose of notice pleading [ ]or prejudice the adverse party").

49    *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980); *accord, Standley v. Dennison,* 05-CV-1033, 2007 WL 2406909, at *6, n. 27 (N.D.N.Y. Aug.21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *2 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.,* 489 F.Supp.2d 305, 307 (W.D.N.Y.2007); *Cosby v. City of White Plains,* 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb.9, 2007); *Lopez v. Wright,* 05-CV-1568, 2007 WL 388919, at *3, n. 11 (N.D.N.Y. Jan.31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons,* 05-CV-0904, 2007 WL 37404, at *4 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

50    *McGinty v. State of New York,* 251 F.3d 84, 100 (2d Cir.2001) [citation omitted]; *see also* Fed.R.Civ.P. 12(h)(3).

51    42 U.S.C. § 1983 [emphasis added].

52    *See, supra,* note 44 of this Report-Recommendation.

53    *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993) ("The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued. To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron,* 996 F.2d 1439, 1441 (2d Cir.1993) ( "[I]t is clear that the Eleventh Amendment does not permit suit [under *Section 1983*] for money damages against state officials in their official capacities."); *Farid v. Smith,* 850 F.2d 917, 921 (2d Cir.1988) ("The eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity."); *see also Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in

his or her official capacity is not a suit against the official but rather is a suit against the official's office.... As such, it is no different from a suit against the State itself.... We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Kentucky v. Graham,* 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity."); *see also Holloway v. Selsky,* 05-CV-0501, 2007 WL 433375, at *4 (N.D.N.Y. Feb.6, 2007) (Sharpe, J.) [citing cases].

54   *See, infra,* note 41 of this Report-Recommendation (citing cases).

55   The authority to conduct this *sua sponte* analysis is derived from two sources: (1) 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis* ] at any time if the court determines that ... the action ... is frivolous or malicious[,] ... fails to state a claim on which relief may be granted[,] ... or ... seeks monetary relief against a defendant who is immune from such relief"; and (2) 28 U.S.C. § 1915A(b), which provides that, "[o]n review, the court shall ... dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted ...."

56   As explained above in Part II of this Report-Recommendation, a dismissal for failure to state a claim may be based not only on a successful challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2), but also on a successful challenge to the legal cognizability of the claims asserted in the pleading. *See, supra,* notes 26 and 27 of this Report-Recommendation.

57   *Farmer v. Brennan,* 511 U.S. 825, 827, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for "deliberate indifference" under the Eighth Amendment."); *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998) ("The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.") [internal quotation marks and citations omitted]; *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) ("The subjective element requires a state of mind that is the equivalent of criminal recklessness ....") [citation omitted]; *accord, Koehl v. Greene,* 06-CV-0478, 2007 WL 2846905, at *17, n. 98 (N.D.N.Y. Sept.26, 2007) (Kahn, J.), *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *15, n. 124 (N.D.N.Y. Jan.23, 2007) (Kahn, J.), *Salaam v. Adams,* 03-CV-0517, 2006 WL 2827687, at *10, n. 59 (N.D.N.Y. Sept.29, 2006) (Kahn, J.).

58   In addition, it is worth noting that Plaintiff's explanation to Defendant Bleau consisted of a statement that Plaintiff could not urinate because of his prostate *medication,* not because of his prostate *condition. See, supra,* Part I.A. of this Report-Recommendation. As a result, Defendant Bleau would not have become *aware* of the reason for Plaintiff's inability to urinate (which Plaintiff now alleges was his prostate *condition,* not his prostate *medication* ), even if Defendant Bleau had remained in Plaintiff's presence and listened to his explanation.

59   *Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence."); *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Murphy v. Grabo,* 94-CV-1684, 1998 WL 166840, at *4 (N.D.N.Y. Apr.9, 1998) (Pooler, J .) ("Deliberate indifference, whether evidenced by [prison] medical staff or by [prison] officials who allegedly disregard the instructions of [prison] medical staff, requires more than negligence.... Disagreement with prescribed treatment does not rise to the level of a constitutional claim.... Additionally, negligence by physicians, even amounting to malpractice, does not become a constitutional violation merely because the plaintiff is an inmate.... Thus, claims of malpractice or disagreement with treatment are not actionable under section 1983.") [citations omitted].").

60   *See, supra,* note 44 of this Report-Recommendation.

61   *Accord, Lugo v. Van Orden,* 07-CV-0879, 2008 U.S. Dist. LEXIS 56707, at *7, 2008 WL 2884925 (N.D.N.Y. July 23, 2008) (McAvoy, J.); *Darvie v. Countryman,* 08-CV-0715, 2008 U.S. Dist. LEXIS 60931, 2008 WL 3286250 (N.D.N.Y. Aug. 7, 2008) (Sharpe, J.), *adopting* 2008 U.S. Dist. LEXIS 52797, at *18, n. 5, 2008 WL 2725071 (N.D.N.Y. July 10, 2008) (Lowe, M.J.); *Anderson v. Banks,* 06-CV-0625, 2008 U.S. Dist. LEXIS 60896, at *16-17, 2008 WL 3285917 (N.D.N.Y. May 19, 2008) (Homer, M.J.), *adopted by* 2008 U.S. Dist. LEXIS 60932, 2008 WL 3285917 (N.D.N.Y. Aug. 6, 2008) (Sharpe, J.); *Stewartson v. Almstead,* 04-CV-1097, 2008 U.S. Dist. LEXIS 22178, at *7, 2008 WL 783367 (N.D.N.Y. March 20, 2008)

(McAvoy, J.); *McEachin v. Goord,* 06-CV-1192, 2008 U.S. Dist. LEXIS 27479, at *12, 2008 WL 1788440 (N.D.N.Y. Feb. 8, 2008) (Treece, M.J.), *adopted by* 2008 U.S. Dist. LEXIS 31879, 2008 WL 1788440 (N.D.N.Y. Apr. 17, 2008) (Hurd, J.); *Murray v. Pataki,* 03-CV-1263, 2007 U.S. Dist. LEXIS 26959, at *27, 2007 WL 965345 (N.D.N.Y. March 5, 2007) (Treece, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 23065, 2007 WL 956941 (N.D.N.Y. March 29, 2007) (Kahn, J.); *Madera v. Goord,* 103 F.Supp.2d 536, 542 (N.D.N.Y.2000) (Kahn, J., adopting Report-Recommendation by Di Bianco, M.J.).

62    *See, supra,* note 44 of this Report-Recommendation.

63    *See, e.g., Spence v. Senkowski,* 91-CV-0955, 1998 WL 214719, at *3 (N.D.N.Y. Apr.17, 1998) (McCurn, J.) (180 days that plaintiff spent in S.H.U., where he was subjected to numerous conditions of confinement that were more restrictive than those in general population, did not constitute atypical and significant hardship in relation to ordinary incidents of prison life); *accord, Husbands v. McClellan,* 990 F.Supp. 214, 217-19 (W.D.N.Y.1998) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Warren v. Irvin,* 985 F.Supp. 350, 353-56 (W.D.N.Y.1997) (161 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Ruiz v. Selsky,* 96-CV-2003, 1997 WL 137448, at *4-6 (S.D.N.Y.1997) (192 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Horne v. Coughlin,* 949 F.Supp. 112, 116-17 (N.D.N.Y.1996) (Smith, M.J.) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Nogueras v. Coughlin,* 94-CV-4094, 1996 WL 487951, at *4-5 (S.D.N.Y. Aug.27, 1996) (210 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Carter v. Carriero,* 905 F.Supp. 99, 103-04 (W.D.N.Y.1995) (270 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population).

64    *Jackson v. Onondaga County,* 05-CV-1393, 2008 U.S. Dist. LEXIS 64930, at *40 & n. 46, 549 F. Supp. 2d 204 (N.D.N.Y. Jan. 8, 2008) (Lowe, M.J.) [citations omitted], *adopted on* de novo *review by* 05-CV-1393, 2008 U.S. Dist. LEXIS 22175, 2008 WL 782655 (N.D.N.Y. March 20, 2008) (McAvoy, J.); *see also Martin v. Mitchell,* 92-CV-0716, 1995 U.S. Dist. LEXIS 19006, at *10-12, 1995 WL 760651 (N.D.N.Y. Nov. 24, 1995) (McAvoy, C.J.) (rejecting plaintiff's assertion that prison disciplinary hearing officer "had a duty to investigate the identity of [a correction officer identified by the plaintiff merely as] 'Budd' and call him to testify"); *Hampton v. McGinnis,* 89-CV-6344, 1992 U.S. Dist. LEXIS 15696, at *6, 1992 WL 309553 (S.D.N.Y. Oct. 15, 1992) ("[I]t was not [the disciplinary hearing officer's] duty to investigate [the prisoner's assault] claim, and plaintiff was not precluded from offering his own evidence on that subject."); *cf. Kingsley v. Bureau of Prisons,* 937 F.2d 26, 31 (2d Cir.1991) (under circumstances, a hearing officer did have a duty to identify the name of the plaintiff's desired witness because [1] the plaintiff had an "especially compelling" need for the witness, [2] the witness's identity was "readily available" to the hearing officer, [3] the plaintiff had arrived at the prison only five days earlier, [4] fulfilling the request would not have delayed the imposition of "swift discipline," and [5] "no other institutional objective was implicated").

65    *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ("The terms of § 1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' *of the United States.*") (emphasis added); *Patterson v. Coughlin,* 761 F.2d 886, 890 (2d Cir.1985) ("Recovery under 42 U.S.C. § 1983... is premised upon a showing, first, that the defendant has denied the plaintiff a constitutional or *federal* statutory right ....") (citation omitted; emphasis added); *Fluent v. Salamanca Indian Lease Auth.,* 847 F.Supp. 1046, 1056 (W.D.N.Y.1994) ("The initial inquiry in a § 1983 action is whether the Plaintiff has been deprived of a right 'secured by the Constitution and laws' *of the United States.*") [emphasis added].

66    *See Doe v. Conn. Dept. of Child & Youth Servs.,* 911 F.2d 868, 869 (2d Cir.1990) ("[A] violation of state law neither gives [plaintiff] a § 1983 claim nor deprives defendants of the defense of qualified immunity to a proper § 1983 claim."); *Patterson,* 761 F.2d at 891 ("[A] state employee's failure to conform to state law does not in itself violate the Constitution and is not alone actionable under § 1983....") (citation omitted); *Murray v. Michael,* 03-CV-1434, 2005 WL 2204985, at * 10 (N.D.N.Y. Sept.7, 2005) (DiBianco, M.J.) ("[A]ny violations of state regulations governing the procedures for disciplinary hearings ... do not rise to the level of constitutional violations.") (citation omitted); *Rivera v. Wohlrab,* 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) ("[V]iolations of state law procedural requirements do not alone constitute a deprivation of due process since '[f]ederal constitutional standards rather than state law define the requirements of procedural due process.'") (citing *Russell v. Coughlin,* 910 F.2d 75, 78 n. 1 [2d Cir.1990] ).

67    *See Rivera v. Wohlrab,* 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) (citation omitted); *Lopez v. Reynolds,* 998 F.Supp. 252, 259 (W.D.N.Y.1997).

68    *See Farinaro v. Coughlin,* 642 F.Supp. 276, 280 (S.D.N.Y.1986).

69    *See, e.g., Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137-38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the

testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *Alexander v. Evans,* 88-CV-5309, 1993 WL 427409, at * 18 n. 8 (S.D.N.Y. Sept.30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation omitted]; s*ee also Murr v. U.S.,* 200 F.3d 895, 902, n. 1 (6th Cir.2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater,* 75 F.3d 1421, 1426 (10th Cir.1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley,* 28 F.3d 532, 535 (5th Cir.1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] ... Respondent has waived procedural default ... objection [ ].") [citations omitted]; *Greenhow v. Sec'y of Health & Human Servs.,* 863 F.2d 633, 638-39 (9th Cir.1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by U.S. v. Hardesty,* 977 F.2d 1347 (9th Cir.1992); *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir.1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted].

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.